UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS ASSOCIATION OF SCHOOL BOARDS, INC.,<br>　　　Plaintiff | § § § § | |
| vs. | § § | CIVIL ACTION NO. 1:15-cv-369 |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br>　　　Defendant | § § § § | |

## ORIGINAL COMPLAINT

Texas Association of School Boards, Inc. respectfully files this complaint against Travelers Casualty and Surety Company of America and would show the following:

### I. JURISDICTION AND VENUE

1. 28 U.S.C. § 1332 (a)(1) gives this Court jurisdiction. Venue is proper in the Western District of Texas because the plaintiff's principal place business is in Austin, Travis County, Texas, and the cause of action arose in whole or in part in this District.

### II. PARTIES

2. Plaintiff Texas Association of School Boards, Inc. (TASB) is a voluntary, nonprofit, statewide educational association for local Texas school boards, which provides services to school districts and other governmental entities. TASB is a Texas corporation with its principal office in Travis County, Texas.

3. Defendant Travelers Casualty and Surety Company of America (Travelers) is a Connecticut corporation. It may be served with process by serving its Texas resident agent for service: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701.

### III. NATURE OF THE ACTION

4.      This breach of contract suit arises from Travelers' denial of an employee theft claim under a policy insuring TASB. Travelers also committed unfair insurance practices by denying the claim. TASB also seeks statutory penalties for Travelers' failure to pay this claim and delay in paying another claim.

### IV. STATEMENT OF FACTS

5.      TASB is a non-profit corporation that provides services to Texas school districts and other governmental entities. Texas Association of School Boards Risk Management Fund (the Fund) is a self-insurance risk pool that provides pooled coverage and risk management services to Texas school districts, community colleges, and other education organizations. The Fund is an entity that is governed by a voluntary board of trustees but has no employees. The Fund is administered by TASB, and relies on TASB employees.

6.      Since 1976, the Fund operated an employee benefits pool, which it later discontinued in 2002. The Fund elected to continue providing healthcare administrative services only to self-insured members of the Fund. One of those members was the Brazosport Independent School District (Brazosport).

7.      Beginning in 2000, Brazosport and the Fund entered into an interlocal participation agreement whereby Brazosport would pay a service fee and the Fund would provide services in the administration of Brazosport's self-funded employee benefit plan.

8.      The parties agreed that the Fund or its designee would handle any and all claims that were presented. Brazosport appointed the Fund or its designee as Brazosport's agent to act in all matters pertaining to processing and handling employee benefits claims. The parties agreed that the Fund would have the same rights, responsibilities, and benefits as Brazosport.

All decisions on individual cases were to be made by the Fund or its designee. TASB was the Fund's designee and performed every action required of the Fund.

9. TASB issued claim checks on behalf of Brazosport. The checks bore a TASB logo and Brazosport's name and were signed by TASB employees. Once health care claims were submitted to and processed by TASB employees, payment requests checks were printed and mailed.

10. At all times, TASB was given care, custody, and control of the Brazosport account. Having control over the funds as agent for Brazosport, TASB owed a fiduciary duty to exercise a high degree of care to conserve the principal's money and to pay money only to those entitled to receive it.[1] As trustee of Brazosport's funds, TASB was chargeable with any loss.[2]

11. TASB employees had the right and duty to administer, access, and control the funds in the Brazosport. Unfortunately, TASB's then employee, Herman G. Wilks, Jr., took advantage of TASB's authority to administer, access, and control the funds as a means for him to steal $437,366.92 from the Brazosport account. TASB uncovered this theft after discovering that Wilks had stolen $558,992.12 from other accounts.

12. Wilks stole the money by creating a separate entity that he controlled. Wilks would submit bogus claims on behalf of the entity and have TASB pay the claims by means of an electronic accounting entry from the accounts TASB controlled. In other instances, Wilks made multiple payments for the same claim and then diverted the extra payments to himself.[3]

---

[1] *See City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex. 1969); *Trahan v. Lone Star Title Co. of El Paso, Inc.*, 247 S.W.3d 269, 287 (Tex. App.—El Paso 2007, pet. denied); *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 318 (Tex. App.—Tyler 1985, no writ).

[2] *Crowder v. Meyer*, 01-98-00105-CV, 1999 WL 82442, at *3 (Tex. App.—Houston [1st Dist.] Feb. 11, 1999, no pet.).

[3] Herman Wilks pled guilty to ten counts of mail fraud and was sentenced to sixty-three months in federal prison. *See United States v. Herman G. Wilks*, No. A-13-CR-00514-SS (W.D. Tex., Austin Div., March 17, 2014).

13. TASB had crime coverage for many years with Travelers. TASB submitted its employee theft claims concerning Wilks to Travelers during the 2012-2013 policy year. Eventually, Travelers paid $558,992.12 of the stolen funds but denied the $437,366.92 claim for the theft of Brazosport's funds managed by TASB.

## V. FIRST CAUSE OF ACTION: BREACH OF CONTRACT

14. Travelers insured TASB at the time of these claims under crime policy # 05673682, with a $5 million limit for loss from employee theft. The fidelity coverage provides:

> **Employee Theft** – The Company will pay the **Insured** for the **Insured's** direct loss of, or direct loss from damage to, **Money**, **Securities** and **Other Property** directly caused by **Theft** or **Forgery** committed by an **Employee**, whether identified or not, acting alone or in collusion with other persons.

The policy defines "theft" as "the intentional unlawful taking of **Money**, **Securities** and **Other Property** to the **Insured's** deprivation." The policy describes the property and interests covered as follows:

> **Ownership of Property; Interests Covered**
>
> a. The property covered under this **Crime Policy** except as provided in 5.b. below is limited to property:
>
> \*\*\*
>
> iii. for which the **Insured** is legally liable, except for property located inside the **Insured's Client's Premises** or the **Insured's Client's Financial Institution Premises**.

15. The theft of the Brazosport funds by Wilks is covered under the policy. TASB's employee unlawfully took Brazosport's money for which TASB was legally liable. The loss falls squarely within the coverage Travelers agreed to.

16. By refusing to pay, Travelers breached its contract with TASB. Travelers is therefore liable to TASB for damages resulting from that breach.

17.   TASB has been damaged to the extent of the amount of benefits withheld – $437,366.92.

18.   TASB presented this claim to Travelers, but Travelers did not tender payment within thirty days. Travelers is therefore liable for reasonable attorney's fees as provided by Tex. Civ. Prac. & Rem Code §§ 38.001-.006.

19.   Travelers has given different incorrect reasons for denying the claim. One reason asserted by Travelers is that "the funds in question were property located inside the Insured's Client's Financial Institution Premises." Of course, this is ridiculous – funds in a checking account are not physically located inside the bank premises.

20.   Moreover, even if one accepts Travelers' absurd proposition, Travelers is still liable for breach of contract. That exclusionary language did not appear in any of the prior policies from 2004-2010. The first time the exclusionary phrase – "except for property located inside the Insured's Client's Premises or the Insured's Client's Financial Institution Premises" – was in the 2011 and 2012 renewal policies. It is well settled that renewals must be on the same terms and conditions as the prior policies, and the renewal automatically provides the same coverage unless the insurer gave notice of the change.[4] Travelers gave no notice of the changed language it now relies on, so that change has no effect, and coverage is the same as before. Travelers breached its obligation to pay under the old language or the new.

---

[4]   *Springfield Fire & Marine Ins. Co. v. Hubbs-Johnson Motor Co.*, 42 S.W.2d 248, 252 (Tex. Comm'n App. 1931, judgm't adopted); *Certain Underwriters at Lloyd's, London Subscribing to Policy No. 509/QF037603 v. LM Ericsson Telefon, AB*, 272 S.W.3d 691, 698 (Tex. App.—Dallas 2008, pet. denied); *Safeway Managing Gen. Agency for State & County Mut. Fire Ins. Co. v. Cooper*, 952 S.W.2d 861, 867 (Tex. App.—Amarillo 1997, no writ); *Cont'l Cas. Co. v. Allen*, 710 F. Supp. 1088, 1094 (N.D. Tex. 1989).

## VI. SECOND CAUSE OF ACTION: UNFAIR INSURANCE PRACTICES

21. By the conduct detailed above, Travelers has committed unfair insurance practices in violation of Tex. Ins. Code ch. 541, and those practices have been producing causes of damages to TASB. Specifically, Travelers has committed the following unfair practices:

  (a) **Misrepresenting the terms, benefits, and advantages of the insurance policy, in violation of § 541.051(1)(B):** Travelers misrepresented the benefits it would pay under the policy and misrepresented that the loss is not covered.

  (b) **Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement after liability became reasonably clear, in violation of § 541.060(a)(2)(A):** Travelers' liability is reasonably clear because the loss is covered by the plain language of the policy and is not limited by the provisions Travelers relies on.

  (c) **Refusing to pay a claim without conducting a reasonable investigation, in violation of § 541.060(a)(7):** If Travelers conducted a reasonable investigation, it would have recognized that the money was not located inside the bank and is therefore covered, and that no other bar to coverage exists. Travelers also failed to conduct a reasonable investigation when it insisted on getting a statement from the thief, delaying the claim for six months, until Travelers denied the claim without ever getting the statement.

  (d) **Representing that an agreement confers or involves rights, remedies, or obligations it does not have, in violation of Tex. Bus. & Com. Code § 17.46(b)(12)** – Travelers misrepresented that the loss is not covered because the stolen money was "property located inside the Insured's Client's Premises or the Insured's Client's Financial Institution Premises."

22. Each violation is a producing cause of actual damages to TASB.

23. Further, these unlawful acts and practices were done knowingly.

24. TASB is entitled to recover actual damages, court costs, and attorneys' fees, as provided by Tex. Ins. Code § 541.152(a); and additional damages based on Travelers' knowing violations, as provided by § 541.152(b). TASB is also entitled to any other relief the Court determines is proper. § 541.152(a)(3).

## VII. THIRD CAUSE OF ACTION: PROMPT PAYMENT OF CLAIM VIOLATIONS

25. TASB gave written notice of both of its employee theft claims to Travelers, as provided by the Prompt Payment of Claims Statute, Tex. Ins. Code ch. 542. Travelers violated the statutory deadlines by failing to timely accept or reject both claims and by failing to timely pay both claims. Travelers did not timely accept or reject either claim and did not pay either claim within sixty days after receiving all items reasonably requested and required. Therefore, Travelers has violated the statute. *See* Tex. Ins. Code §§ 542.055(a), 542.056(a), 542.058(a). As a result, Travelers is liable to pay TASB, in addition to the amount of the unpaid claim, interest on the claims at the rate of 18% a year as damages, together with reasonable attorneys' fees. Tex. Ins. Code § 542.060(a).

## VIII. DAMAGES

26. Travelers' conduct as set forth above was a producing and proximate cause of damages to TASB in the amount of $437,366.92, which TASB is legally entitled to recover from Travelers.

27. TASB is also entitled to recover statutory damages of 18% per annum as provided by Texas Insurance Code § 542.060.

## IX. ADDITIONAL DAMAGES

28. Because Travelers' acts were committed knowingly, Travelers is liable for additional damages as a penalty or by way of punishment under Tex. Ins. Code § 541.152(b).

## X. ATTORNEYS' FEES

29. Travelers is liable to TASB for its reasonable and necessary attorneys' fees, including all fees necessary in the event of an appeal as provided by Tex. Ins. Code § 541.152(a)(1) and § 542.060(b), and Tex. Civ. Prac. & Rem. Code § 38.001.

## XI. JURY DEMAND

30. TASB requests that a jury decide this case. The appropriate jury fee has been paid.

## XII. PRAYER

31. TASB prays that Travelers be cited to appear and answer. TASB also prays that upon final trial of this case it have judgment against Travelers for actual damages, statutory penalties, additional damages, prejudgment interest and postjudgment interest, reasonable and necessary attorneys' fees, costs, and such other relief to which TASB may show itself justly entitled.

Respectfully submitted,

Mark L. Kincaid
State Bar No. 11431300

GEORGE, BROTHERS, KINCAID & HORTON LLP
114 West 7th Street, Suite 1100
Austin, Texas 78701
(512) 495-1400
(512) 499-0094 *facsimile*
mkincaid@gbkh.com

ATTORNEYS FOR PLAINTIFF TEXAS
ASSOCIATION OF SCHOOL BOARDS, INC.