**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **TEXAS ASSOCIATION OF SCHOOL** | § | |
| **BOARDS, INC.,** | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 1:15-cv-369-RP** |
| | § | |
| **TRAVELERS CASUALTY AND** | § | |
| **SURETY COMPANY OF AMERICA,** | § | |
| **Defendant** | § | |

## AMENDED COMPLAINT

Texas Association of School Boards, Inc. respectfully files this amended complaint against Travelers Casualty and Surety Company of America and would show the following:

## I.  JURISDICTION AND VENUE

1.      28 U.S.C. § 1332 (a)(1) gives this Court jurisdiction.  Venue is proper in the Western District of Texas because the plaintiff's principal place business is in Austin, Travis County, Texas, and the cause of action arose in whole or in part in this District.

## II.  PARTIES

2.      Plaintiff Texas Association of School Boards, Inc. (TASB) is a voluntary, nonprofit, statewide educational association for local Texas school boards, which provides services to school districts and other governmental entities.  TASB is a Texas corporation with its principal office in Travis County, Texas.

3.      Defendant Travelers Casualty and Surety Company of America (Travelers) is a Connecticut corporation.  It has appeared in this lawsuit.

### III.  NATURE OF THE ACTION

4.     This breach of contract suit arises from Travelers' denial of an employee theft claim under a policy insuring TASB.  Travelers also committed unfair insurance practices by denying the claim. TASB also seeks statutory penalties for Travelers' failure to pay this claim and delay in paying another claim.

### IV.  STATEMENT OF FACTS

5.     TASB is a non-profit corporation that provides services to Texas school districts and other governmental entities. Texas Association of School Boards Risk Management Fund (the Fund) is a self-insurance risk pool that provides pooled coverage and risk management services to Texas school districts, community colleges, and other education organizations.  The Fund is an entity that is governed by a voluntary board of trustees but has no employees.  The Fund is administered by TASB and relies on TASB employees.

6.     Since 1976, the Fund operated an employee benefits pool, which it discontinued in 2002.  The Fund elected to continue providing healthcare administrative services only to self-insured members of the Fund.  One of those members was the Brazosport Independent School District (Brazosport).

7.     Beginning in 2000, Brazosport and the Fund entered into an interlocal participation agreement whereby Brazosport would pay a service fee and the Fund would provide services in the administration of Brazosport's self-funded employee benefit plan.

8.     The parties agreed that the Fund or its designee would handle any and all claims that were presented.  Brazosport appointed the Fund or its designee as Brazosport's agent to act in all matters pertaining to processing and handling employee benefits claims.  The parties agreed that the Fund would have the same rights, responsibilities, and benefits as Brazosport.

All decisions on individual cases were to be made by the Fund or its designee. TASB was the Fund's designee and performed every action required of the Fund.

9.      TASB issued claim checks on behalf of Brazosport. The checks bore a TASB logo and Brazosport's name and were signed by TASB employees. Once health care claims were submitted to and processed by TASB employees, payment checks were printed and mailed.

10.     At all times TASB was given care, custody, and control of the Brazosport account. Having control over the funds as agent for Brazosport, TASB owed a fiduciary duty to exercise a high degree of care to conserve the principal's money and to pay money only to those entitled to receive it.[1] As trustee of Brazosport's funds, TASB was chargeable with any loss.[2]

11.     TASB employees had the right and duty to administer, access, and control the funds in the Brazosport account. Unfortunately, TASB's then-employee, Herman G. Wilks, Jr., took advantage of TASB's authority to administer, access, and control the funds as a means for him to steal $437,366.92 from the Brazosport account. TASB uncovered this theft after discovering that Wilks had stolen $558,992.12 from other accounts.

12.     Wilks stole the money by creating a separate entity that he controlled. Wilks would submit bogus claims on behalf of the entity and have TASB pay the claims by means of electronic accounting entries from the accounts TASB controlled. In other instances, Wilks made multiple payments for the same claim and then diverted the extra payments to himself.[3]

---

[1]      *See City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex. 1969); *Shearer v. Shearer*, No. 06-12-00096-CV, 2013 WL 3771409, at *8 (Tex. App.—Texarkana July 16, 2013, no pet.); *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 318 (Tex. App.—Tyler 1985, no writ).

[2]      *Crowder v. Meyer*, 01-98-00105-CV, 1999 WL 82442, at *3 (Tex. App.—Houston [1st Dist.] Feb. 11, 1999, no pet.).

[3]      Herman Wilks pled guilty to ten counts of mail fraud and was sentenced to sixty-three months in federal prison. *See United States v. Herman G. Wilks*, No. A-13-CR-00514-SS (W.D. Tex., Austin Div., March 17, 2014).

13.     TASB had crime coverage for many years with Travelers.  TASB submitted its employee theft claims concerning Wilks to Travelers during the 2012-2013 policy year.  The crime policy expressly covers "theft … committed by an Employee," and that is what Wilks did. The crime policy expressly covers "property … for which the Insured is legally liable," and that is what Wilks stole – property of Brazosport for which TASB was legally liable because of its care, custody, and control of the account.

14.     Despite being paid premiums for years to cover this type of risk, Travelers unfairly refused to pay the Brazosport claim, without any reasonable basis, and repeatedly misrepresented the coverage under the policy.  Eventually, Travelers paid TASB's $558,992.12 claim but denied the $437,366.92 claim for the theft of Brazosport's funds managed by TASB.

15.     TASB discovered the first loss around March 21, 2013, and gave Travelers notice of that claim on March 26, 2013.  TASB discovered the second loss – from the Brazosport account – around April 10, 2013, and gave notice of the claim on April 17, 2013.  By May 6, 2013, TASB had given Travelers all the information the insurer requested, so that the statutory deadlines were triggered to accept or reject, and pay the claims.  Travelers was legally required to accept or reject the claims within fifteen business days, by May 27, 2013, but did not.  *See* Tex. Ins. Code § 542.056.  Travelers was legally required to pay the claims within sixty days, by July 5, 2013, but did not.  *See* Tex. Ins. Code § 542.058.

16.     Inexplicably, unfairly, and falsely, Robert Grennan, senior claims counsel for Travelers, on June 14, 2013, emailed that Travelers could not conclude its investigation until it interviewed the thief, who could not be interviewed because of the pending FBI criminal investigation.  Grennan repeated this falsehood in emails on July 1 and July 8, 2013.  In his July

8th email, Grennan admitted that Travelers could make a decision on the validity of the claim based on the documentation in its possession, but Travelers did not.

17.     This misrepresentation that Travelers could not take a position on the claim until it interviewed the thief, who could not be interviewed, stalled the claims for months.  After inquiries from TASB, Travelers finally accepted the first claim on November 7, 2013, and paid it on November 20, 2013 – without ever conducting the interview Grennan falsely claimed was needed.

18.     Travelers continued to unfairly deny and delay the second claim.  Travelers ignored that claim until TASB's lawyer wrote to Grennan on January 7, 2014, complaining of the delay.  The letter cited specific policy language covering "employee theft" and "property for which you are liable."  The letter reminded Travelers of its duties under the Texas Insurance Code to conduct a reasonable investigation of the claim, to affirm or deny coverage within a reasonable time, and to attempt in good faith to effectuate a prompt, fair and equitable settlement when liability has become reasonably clear.

19.     Travelers finally responded on January 30, 2014, belatedly denying the second claim.  Grennan's letter continued the misrepresentations and unfair denial.  Grennan falsely wrote that "Travelers has reviewed all applicable policies in a light most favorable to TASB for the loss sustained by Brazosport," but then he proceeded to misconstrue and misapply the policy language.

20.     First, he misrepresented the policy by asserting that there was no coverage because Brazosport was not an insured.  He wrote, "For the loss sustained by Brazosport to be covered under the policy, Brazosport needs to establish that it is an Insured under the policy."

That misrepresentation ignores the language of the policy insuring TASB for its loss for employee theft.

21.    Second, Grennan falsely asserted that the Brazosport property was not in the care, custody, or control of TASB.  It is undisputed that TASB at all times had care, custody, and control of the account.  That is how TASB's employee was able to steal the money, because TASB was responsible for and managed the account.  This information was known to Travelers from its investigation of the claim, based on information provided by TASB.  Travelers ignored the policy language covering property "for which the Insured is legally liable," which applies to the Brazosport account.  Instead, Grennan made up a requirement that appears nowhere in the policy, falsely asserting that the funds had to be deposited into a TASB account, or retained by TASB.  Grennan falsely asserted that the policy only provided coverage for money that the insured holds for others on its "Premises or Financial Institution Premises."  That is contrary to the express policy language covering property "for which the Insured is legally liable."

22.    Third, Grennan absurdly and falsely asserted that the loss was not covered because "the funds in question were property located inside the Insured's Client's Financial Institution Premises, and as such are excluded from property covered under the Policy."  While the policy does exclude property "located inside … the Insured Client's Financial Institution Premises," that exception does not apply to Brazosport's checking account.

23.    The policy exception makes clear that physical presence is required, defining "Financial Institution Premises" as "*the interior of that portion of any building* occupied by a Financial Institution (*including any night depository chute and any safe* maintained by such Financial Institution), transfer agent or registrar or similarly recognized place of safe deposit." (Emphasis added).  Checking account funds are not physically located inside the bank building,

and no reasonable person could believe otherwise.  Banks don't keep money in depositors'

accounts.  Banks keep electronic records of amounts owed and make payments as requested.

The money reflected in those entries is not located inside any part of the bank building, deposit

chute, or safe.

24.     The falseness of these grounds for denying the claim was pointed out to Travelers

in another letter from TASB's lawyer on February 4, 2014, which complained of the delay and

reminded Travelers of its duty to investigate and pay the claim.

25.     Travelers continued in its unfair denial of the claim and misrepresentation of

benefits in a February 14, 2014, letter from Grennan.  He repeated his false assertions that there

was no coverage because Brazosport was not an insured and because the property was located

inside the bank.

26.     Grennan added another misrepresentation of benefits and another unreasonable

basis for denying the claim, by suggesting that the claim was not covered because TASB did not

obtain separate coverage for "Employee Theft of Client Property."  That suggestion is directly

contradicted by the policy.  Coverage for "Employee Theft of Client Property" appears in section

A(3) of the crime policy.  Condition V(A)(5) applies this coverage only "while property is inside

the Insured's Client's Premises or the Insured's Client's Financial Institution Premises."  The

checking account funds were never inside these premises, so there would be no coverage under

"Employee Theft of Client Property."  Grennan's suggestion otherwise is false.[4]

27.     Grennan also misrepresented the policy benefits and asserted another

unreasonable basis for denying the claim by asserting that TASB was "vicariously liable" for

Wilks's theft and thus is not covered.  This assertion was baseless, as TASB was not *vicariously*

---

[4]     This is a misrepresentation of the policy benefits, which Travelers continued to make in later correspondence and continues to make in its pleading in this case.

*liable* for the loss – TASB was *directly liable*, because of its care, custody, and control of the account. The information TASB provided about its relationship with Brazosport established that TASB was responsible to Brazosport for any loss of those funds, because TASB was acting as agent for Brazosport and therefore owed a fiduciary duty to Brazosport to safeguard those funds.[5] TASB's liability was based on its relationship to Brazosport and the account. This liability fits squarely within the coverage for property "for which the Insured is legally liable."

28.     In contrast, "vicarious liability" holds a principal liable for the conduct of its employee based on the principal's right to control the employee's actions undertaken to further the principal's objectives. Vicarious liability is based solely on the relationship between the principal and employee, not on the principal's conduct.[6] TASB was not liable because Wilks was its employee. TASB was liable because it was responsible for the account. TASB would have been liable to Brazosport for loss of the funds through theft by anyone, employee or otherwise. Grennan's "vicarious liability" argument was groundless and could not have been in good faith, based on the facts regarding TASB's responsibility for the Brazosport account.

29.     Travelers continued its pattern of bad faith and unfair practices by informing TASB on May 29, 2014, that it was refusing to renew coverage, presumably because TASB had the temerity to assert valid claims under the policy.

30.     Travelers was given another opportunity to pay the claim when TASB's lawyer sent a pre-suit demand letter on January 13, 2015. That letter explained at length why the

---

[5]     "Under the common law of most jurisdictions, including Texas, agency is also a special relationship that gives rise to a fiduciary duty." *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002). As previously noted, an agent is obligated to exercise a high degree of care to conserve his principal's money and to pay it only to those entitled to receive it. *City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex. 1969); *Shearer v. Shearer*, No. 06-12-00096-CV, 2013 WL 3771409, at *8 (Tex. App.—Texarkana July 16, 2013, no pet.); *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 318 (Tex. App.—Tyler 1985, no writ).

[6]     *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007); *St. Anthony's Hosp. v. Whitfield*, 946 S.W.2d 174, 177 (Tex. App.—Amarillo 1997, writ denied).

positions taken by Travelers were wrong based on the facts and the plain language of the policy. The letter expressly pointed out the coverage for employee theft of property for which TASB was legally liable and again explained how TASB was legally liable – not vicariously liable – to Brazosport for the lost funds.  The letter pointed out numerous authorities demonstrating the fallacy of the position taken by Travelers.  The letter pointed out the absurdity of the argument that the loss was excluded because the money was "located inside … the interior of the bank building."

31.     Nevertheless, Travelers knowingly persisted in misrepresenting the policy benefits and denying the claim without a reasonable basis.  On February 4, 2015, a lawyer for Travelers sent a letter repeating the false assertion that the loss would have been covered if TASB obtained coverage for "theft of client property."  As noted above that coverage would not apply, because it only applies "while property is inside the Insured's Client's Premises or the Insured's Client's Financial Institution Premises."  Travelers continued to falsely assert that the loss was for "vicarious liability" – continuing to ignore the fact that TASB is liable because of its relationship to Brazosport and the account, separate and apart from any vicarious liability for TASB's employee

32.     Travelers continues in this lawsuit to assert these misrepresentations of coverage and unreasonable grounds to deny the claim.[7]  Travelers adds a new unreasonable basis for denying the claim, asserting that TASB's fiduciary duty to Brazosport is "inconsequential" and "does not create 'legal liability.'"[8]  In fact, under controlling authority TASB's status as fiduciary is very consequential as it made TASB's liable to Brazosport, which established coverage under the policy.  Travelers' unfair refusal to pay continues.

---

[7]     *See Motion to Dismiss*, ¶¶ 15-18 (theft of client property coverage) ¶¶ 19-22 (vicarious liability).

[8]     *Id.*, ¶¶ 22, 29.

### V.  FIRST CAUSE OF ACTION: BREACH OF CONTRACT

33.     Travelers insured TASB at the time of these claims under crime policy #05673682, with a $5 million limit for loss from employee theft.  The fidelity coverage provides:

> **Employee Theft** – The Company will pay the **Insured** for the **Insured's** direct loss of, or direct loss from damage to, **Money**, **Securities** and **Other Property** directly caused by **Theft** or **Forgery** committed by an **Employee**, whether identified or not, acting alone or in collusion with other persons.

The policy defines "theft" as "the intentional unlawful taking of **Money**, **Securities** and **Other Property** to the **Insured's** deprivation."  The policy describes the property and interests covered as follows:

> **Ownership of Property; Interests Covered**
>
> a.     The property covered under this **Crime Policy** except as provided in 5.b. below is limited to property:
>
> ***
>
> iii.    for which the **Insured** is legally liable, except for property located inside the **Insured's Client's Premises** or the **Insured's Client's Financial Institution Premises**.

34.     The theft of the Brazosport funds by Wilks is covered under the policy.  TASB's employee unlawfully took Brazosport's money for which TASB was legally liable.  The loss falls squarely within the coverage Travelers agreed to.

35.     By refusing to pay, Travelers breached its contract with TASB.  Travelers is therefore liable to TASB for damages resulting from that breach.

36.     TASB has been damaged to the extent of the amount of benefits withheld – $437,366.92.

37.     TASB presented this claim to Travelers, but Travelers did not tender payment within thirty days.  Travelers is therefore liable for reasonable attorney's fees as provided by Tex. Civ. Prac. & Rem Code §§ 38.001-.006.

38.     Travelers has given different incorrect reasons for denying the claim.  One reason asserted by Travelers is that "the funds in question were property located inside the Insured's Client's Financial Institution Premises."  Of course, this is ridiculous – funds in a checking account are not physically located inside the bank premises.

39.     Moreover, even if one accepts Travelers' absurd proposition, Travelers is still liable for breach of contract.  That exclusionary language did not appear in any of the prior policies from 2004-2010.  The first time the exclusionary phrase – "except for property located inside the Insured's Client's Premises or the Insured's Client's Financial Institution Premises" – appeared was in the 2011 and 2012 renewal policies.  It is well settled that renewals must be on the same terms and conditions as the prior policies, and the renewal automatically provides the same coverage unless the insurer gave notice of the change.[9]  Travelers gave no notice of the changed language it now relies on, so that change has no effect, and coverage is the same as before.  Travelers breached its obligation to pay under the old language or the new.

## VI.  SECOND CAUSE OF ACTION:  UNFAIR INSURANCE PRACTICES

40.     By the conduct detailed above, Travelers has committed unfair insurance practices in violation of Tex. Ins. Code ch. 541, and those practices have been producing causes of damages to TASB.  Specifically, Travelers has committed the following unfair practices:

(a)     **Misrepresenting the terms, benefits, and advantages of the insurance policy, in violation of § 541.051(1)(B):** Travelers misrepresented the benefits it would pay under the policy and misrepresented that the loss is not covered.

---

[9]     *Springfield Fire & Marine Ins. Co. v. Hubbs-Johnson Motor Co.*, 42 S.W.2d 248, 252 (Tex. Comm'n App. 1931, judgm't adopted); *Certain Underwriters at Lloyd's, London Subscribing to Policy No. 509/QF037603 v. LM Ericsson Telefon, AB*, 272 S.W.3d 691, 698 (Tex. App.—Dallas 2008, pet. denied); *Safeway Managing Gen. Agency v. Cooper*, 952 S.W.2d 861, 867 (Tex. App.—Amarillo 1997, no writ); *Cont'l Cas. Co. v. Allen*, 710 F. Supp. 1088, 1094 (N.D. Tex. 1989).

**(b)** **Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement after liability became reasonably clear, in violation of § 541.060(a)(2)(A):** Travelers' liability is reasonably clear because the loss is covered by the plain language of the policy and is not limited by the provisions Travelers relies on.

**(c)** **Refusing to pay a claim without conducting a reasonable investigation, in violation of § 541.060(a)(7):** If Travelers conducted a reasonable investigation, it would have recognized that the money was not located inside the bank and is therefore covered, and that no other bar to coverage exists. Travelers also failed to conduct a reasonable investigation when it insisted on getting a statement from the thief, delaying the claim for six months, until Travelers denied the claim without ever getting the statement.

**(d)** **Representing that an agreement confers or involves rights, remedies, or obligations it does not have, in violation of Tex. Bus. & Com. Code § 17.46(b)(12)** – Travelers misrepresented that the loss is not covered because the stolen money was "property located inside the Insured's Client's Premises or the Insured's Client's Financial Institution Premises."

41.     Each violation is a producing cause of actual damages to TASB in the amount of $437,366.92.

42.     Further, these unlawful acts and practices were done knowingly. "Knowingly" means actual awareness of the falsity, unfairness, or deceptiveness of the act or practice. Actual awareness may be inferred if objective manifestations indicate that a person acted with actual awareness. Tex. Ins. Code. § 541.002(1). As set forth above, the unreasonableness of the positions taken by Travelers and the conflict between those positions and the facts and plain language of the policy support an inference that Travelers is actually aware of the falsity, unfairness, and deceptiveness of its conduct.

43.     TASB is entitled to recover actual damages, court costs, and attorneys' fees, as provided by Tex. Ins. Code § 541.152(a); and additional damages based on Travelers' knowing violations, as provided by § 541.152(b). TASB is also entitled to any other relief the Court determines is proper. § 541.152(a)(3).

## VII.  **THIRD CAUSE OF ACTION:  PROMPT PAYMENT OF CLAIM VIOLATIONS**

44.     TASB gave written notice of both of its employee theft claims to Travelers, as provided by the Prompt Payment of Claims Statute, Tex. Ins. Code ch. 542.  Travelers violated the statutory deadlines by failing to timely accept or reject both claims and by failing to timely pay both claims.

45.     As set forth above, Travelers was legally required to accept or reject both claims within fifteen business days after it all items it required from TASB.  Tex. Ins. Code § 542.056. Travelers received those items from TASB on May 6, 2013, making May 27, 2013, the deadline to accept or reject the claims.  Travelers did not accept the first claim until November 7, 2013, which was 164 days late.  Travelers is therefore liable for a penalty of 18%, which is $43,969.69.[10]

46.     Travelers did not reject the second claim until January 30, 2014, which was 248 days late.  Travelers is therefore liable for a penalty on the second claim in the amount of $53,490.57.[11]

47.     Travelers was legally obligated to pay within sixty days after it received the requested information.  Tex. Ins. Code § 542.058(a).  That deadline was July 5, 2013.

48.     Travelers did not pay the first claim until November 20, 2013, which was 138 days late.  Travelers is therefore liable for a penalty of $36,999.18.[12]

---

[10]     The daily penalty is ($543,663.20 x 18%) ÷ 365 = $268.11.  The total penalty is 164 x 268.11 = $43,969.69.

[11]     The daily penalty is ($437,366.92 x 18%) ÷ 365 = $215.69.  The total penalty is $215.69 x 248 = $53,490.57.

[12]     The daily penalty is ($543,663.20 x 18%) ÷ 365 = $268.11.  The total penalty is 138 x 268.11 = $36,999.18.

49.     Travelers has failed to pay the second claim.  It is liable for a penalty of $160,689.05, so far.[13]  That penalty continues to accrue at the rate of $215.69 daily until the claim is paid.

50.     Travelers is liable to pay TASB the amount of the unpaid claim, penalties, and reasonable attorneys' fees.  Tex. Ins. Code § 542.060(a).

## VIII.  DAMAGES

51.     Travelers' conduct as set forth above was a producing and proximate cause of damages to TASB in the amount of $437,366.92, which TASB is legally entitled to recover from Travelers.

52.     TASB is also entitled to recover statutory damages of 18% per annum as provided by Texas Insurance Code § 542.060.

## IX.  ADDITIONAL DAMAGES

53.     Because Travelers' acts were committed knowingly, Travelers is liable for additional damages as a penalty or by way of punishment under Tex. Ins. Code § 541.152(b).

## X.  ATTORNEYS' FEES

54.     Travelers is liable to TASB for its reasonable and necessary attorneys' fees, including all fees necessary in the event of an appeal as provided by Tex. Ins. Code § 541.152(a)(1) and § 542.060(b), and Tex. Civ. Prac. & Rem. Code § 38.001.

---

[13]     The daily penalty is ($437,366.92 x 18%) ÷ 365 = $215.69.  The delay as of July 20, 2015, is 745 days. The accrued penalty as of that date is $215.69 x 745 = $160,689.05.

## XI.  JURY DEMAND

55.    TASB requests that a jury decide this case.  The appropriate jury fee has been paid.

## XII.  PRAYER

56.    TASB prays that Travelers be cited to appear and answer.  TASB also prays that upon final trial of this case it have judgment against Travelers for actual damages, statutory penalties, additional damages, prejudgment interest and postjudgment interest, reasonable and necessary attorneys' fees, costs, and such other relief to which TASB may show itself justly entitled.

Respectfully submitted,

*/s/ Mark L. Kincaid*

Mark L. Kincaid
State Bar No. 11431300

GEORGE, BROTHERS, KINCAID & HORTON LLP
114 West 7th Street, Suite 1100
Austin, Texas 78701
(512) 495-1400
(512) 499-0094 *facsimile*
mkincaid@gbkh.com

ATTORNEYS FOR PLAINTIFF TEXAS
ASSOCIATION OF SCHOOL BOARDS, INC.

## **CERTIFICATE OF SERVICE**

A true and correct copy of this document was sent to the following counsel of record, via

the CM/ECF electronic filing system on the 20th day of July, 2015.

Brandon K. Bains
Langley, LLP
2937 SW 27th Avenue, Suite 106
Miami, FL 33133

Keith A. Langley
Langley, LLP
901 Main Street, Suite 600
Dallas, TX 75202

/s/ Mark L. Kincaid
_____
Mark L. Kincaid